Judgment reversed and new trial granted, costs to abide the event.

---

In the Matter of the Application of THE SCHOOL BOARD OF THE BOROUGH OF BROOKLYN, Respondent, for a Peremptory Writ of Mandamus against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, THE SCHOOL BOARD OF THE BOROUGHS OF MANHATTAN AND THE BRONX, THE SCHOOL BOARD OF THE BOROUGH OF QUEENS, and THE SCHOOL BOARD OF THE BOROUGH OF RICHMOND, Appellants.

*Greater New York charter — the distribution of the general school funds by the board of education on July* 1, 1898.

Section 11 of chapter 378 of the Laws of 1897 (the Greater New York charter), requires a distribution of the general school funds by the board of education, upon the basis prescribed by section 1065 of the charter, to begin on July 1, 1898.

APPEAL by The Board of Education of the City of New York and others from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 25th day of October, 1898, granting the motion of the school board of the borough of Brooklyn that a peremptory writ of mandamus issue directing the board of education of the city of New York to forthwith apportion the general school fund among the several borough school boards of the said city, under and in pursuance and on the basis of section 1065 of the Greater New York charter.

*E. Ellery Anderson*, for the appellants.

*Ira Leo Bamberger* and *J. Edward Swanstrom*, for the respondent.

WILLARD BARTLETT, J.:

The thorough and satisfactory discussion which this case received in the opinion of the learned judge who heard it at Special Term* has left us little to do. In affirming the order appealed from, upon the grounds stated in that opinion, we deem it necessary

* The following is the opinion of the Special Term referred to in the opinion: GAYNOR, J.:

This was an application of the School Board of the borough of Brooklyn for a peremptory writ of mandamus against the Board of Education of the city of New York, to require it to apportion the general school fund of the said city upon the ratio prescribed by section 1065 of the charter of the new city of New York.

In the Department of Education there is a Board of Education for the entire city, and a school board in each of the boroughs of the city, except that the boroughs of Manhattan and the Bronx are united under one school board. All moneys for school purposes in the city are to be apportioned and raised in two separate funds, called the special school fund and the general school fund. The former consists of moneys for the purchase of school sites, the erection and repair of buildings, the purchase of supplies, and the like; the latter consists almost entirely of moneys for salaries of teachers and all other employees. The yearly budget as prepared by the Board of Estimate and Apportionment, and confirmed by the Municipal Assembly, is required to exhibit each of these funds separated, and also to apportion the said special fund among the said boroughs, while the said general fund has to be raised in bulk and afterwards apportioned among the said borough school boards by the Board of Education upon the ratio of the number of teachers and the aggregate number of days of attendance of pupils under each borough school board. The special fund is administered by the Board of Education; the general fund by the borough school boards as so apportioned among them by the Board of Education.

The foregoing is the financial system of the Department of Education (City Charter, §§ 1057 to 1065). It is easy to see its application. The yearly budget having been made up and confirmed, such budget will show the said two funds separated, viz., the special school fund and the general school fund, and will also exhibit a division of the special fund among the boroughs, but not of the general fund. It will remain for the Board of Education to divide the said general fund among the borough school boards upon the ratio above mentioned.

The case at bar has to do only with a question of such division among the borough school boards of the said general fund by the Board of Education. It is claimed that such scheme of division does not become operative under the charter until the appropriations of the budget now being made up for 1899 come to be used, viz., on January 1, 1899; in other words, that it does not apply to the year 1898, and the present controversy is concerning the division of such general fund for the year 1898.

The new city came into existence on January 1, 1898. The moneys for the expenses of its government for the year 1898 were not appropriated by means of

to add only one or two observations suggested by the oral argument of counsel in this branch of the court.

In behalf of the appellants, much emphasis is laid upon the injustice of distributing the general school fund at this time upon the basis prescribed by section 1065 of the Greater New York char-

a budget made up by the Board of Estimate and Apportionment and the Municipal Assembly. At their regular times in the year 1897 the several municipal corporations which were to be consolidated on January 1, 1898, to make the new city, made their regular appropriations and cast their regular annual taxes for the expenses of the coming year, 1898, by direction of the charter for the new city, which had already been passed (§ 10), just as though such consolidation was not to take place. On January 1, 1898, when the new city came into being, these several appropriations passed under its administration, the charter directing them to be used for the expenses of the new city for the year 1898 "in such manner as the board of estimate and apportionment for that year may determine;" and further providing by the next sentence that "it shall be the duty of the board of estimate and apportionment to apportion the said funds to the various city departments, as created by this act, so that such funds shall be used as nearly as may be for the objects for which they were raised" (§ 10).

Under this provision it was of course the duty of the Board of Estimate and Apportionment to apportion all of the school funds of 1898 to the Department of Education, and that was done. But by section 11 of the new charter the division of the said funds into the said special school fund and general school fund, in conformity with the aforesaid established financial system, was postponed until July 1, 1898. That section provides that on July 1, 1898, the Board of Estimate and Apportionment shall divide the residue or unexpended balances of such school funds into "the special school fund and the general school fund for the year eighteen hundred and ninety-eight, so that the schools of the city may begin in the autumn of the year eighteen hundred and ninety-eight to be conducted upon the basis of this division of funds, and in general, upon the system hereinafter prescribed in this act."

That system I have exhibited at the outset of this opinion, and, as has been seen, it embraces a requirement that the Board of Education shall apportion the general school fund among the borough school boards upon the ratio of the number of teachers and aggregate days of attendance of pupils under such borough boards. And the said section 11 continues and concludes as follows, viz.: "Up to July first, eighteen hundred and ninety-eight, the school money shall be spent as raised, for all school purposes, by the various school boards respectively. It shall be the duty of the board of education, as constituted under this act, to make all appointments therein provided for, and to adopt the necessary by-laws at such time and in such manner that the new system for the administration of the public schools of the city as provided by this act shall go into full effect on July first, eighteen hundred and ninety-eight." It would seem that this explicit provision that the new system should go into full effect on July 1, 1898, could not be made plainer.

ter,* because it is said that although section 901 provides for a rectification of the inequalities between the several boroughs by means of the budget and tax levy of 1899, the teachers, janitors and clerks in the boroughs of Manhattan and the Bronx, Queens and Richmond will meantime be deprived of part of their salaries. Such a result, however, seems to be inevitable under the system of appor-

The Board of Estimate and Apportionment did, on July 1, 1898, divide the said unexpended balances of school funds into such special and general school funds, but the Board of Education has neglected to make the apportionment of the said general school fund among the borough school boards, and the school board of the borough of Brooklyn applies for a peremptory writ of mandamus to require it to do so. The reason assigned for its failure to make such apportionment is, that when, on July 1, 1898, the Board of Estimate and Apportionment divided the unexpended balances of school funds into the said special and general school funds, as aforesaid, and as required by the said section 11 of the charter, it at the same time not only apportioned among the several boroughs the special fund thus constituted, but also assumed to and did apportion the said general fund among the said borough school boards. It so apportioned the said general fund by allotting to each borough school board what remained unexpended of the sum appropriated as aforesaid for school purposes in the territory of such borough in 1897. By this apportionment the school board of the borough of Brooklyn was allotted over $300,000 less than would be allotted to it under an apportionment of such general fund by the Board of Education upon the said ratio which it is required to adopt.

It seems to me that the said apportionment by the Board of Estimate and Apportionment was without authority and therefore a nullity. Section 11 of the charter, as has already been seen, specifically directed the Board of Estimate and Apportionment to divide the unexpended balances of school funds into a special school fund and a general school fund on July 1, 1898, "so that the schools of the city may begin in the autumn of the year eighteen hundred and ninety-eight to be conducted upon the basis of this division of funds, and in general upon the system hereinafter prescribed in this act;" and the words which follow these reiterate the purpose "that the new system for the administration of the public schools of the city as provided by this act shall go into full effect on July first, eighteen hundred and ninety-eight." An essential part of that system, as has been seen, is an apportionment of the general school fund among the borough school boards by the Board of Education upon the basis already mentioned.

It is contended that this explicit provision in section 11 to put the system of school administration prescribed by the charter into "full effect" upon and from July 1, 1898, is nullified in respect of such division of the general school fund by the Board of Education by the prior provision of section 10 already cited, viz., that the funds received from the superseded municipal corporations may be spent in 1898 "in such manner as the board of estimate and apportionment  *  *  *

* Chap. 378, Laws of 1897.—[REP.

tioning the general school fund prescribed by section 1065 of the charter, so long as the conditions remain substantially the same in the respective boroughs; in regard to the number of qualified teachers and the aggregate number of days of attendance by the pupils. This is true whether it be held that the charter requires that apportionment to begin on July 1, 1898, or not until January 1, 1899.

may determine," and that "it shall be the duty of the board of estimate and apportionment to apportion the said funds to the various city departments as created by this act, so that such funds shall be used as nearly as may be, for the objects for which they were raised."

I see no conflict between these provisions of sections 10 and 11. The broad words of section 10, that such funds may be used for the expenses of the city government in such manner as the Board of Estimate and Apportionment may determine, are immediately limited by words making it the duty of the said board to apportion said funds among the departments to be used as nearly as may be for the objects for which they were raised. And then comes section 11 with its further special directions to the said board in respect of the administration of that part of the said funds which was raised for school purposes. All of these provisions construed together by no means leave the said board free to determine the use of the said funds as it sees fit, as might be the case if the first part of the said provision of section 10 stood alone.

Only teachers who alone, or adding their time of service to that of their lineal predecessors, shall have "taught in the schools under the charge of the board during a term of not less than thirty-two weeks," are counted in ascertaining the number of teachers in the borough for the purpose of such division of the general school fund (§ 1065). As thirty-two weeks could not elapse from February 1, 1898, when the Board of Education and the borough school boards came into authority (§ 1061), to July 1, when the general fund was constituted, it is argued that there were no teachers fulfilling the requirement, and that therefore such division was not contemplated for 1898. But the limitation is not to teachers who have taught thirty-two weeks under the borough boards, but to teachers who have taught that length of time in the schools now under the charge of the said boards. This relates back to and covers the time of the said schools under the government of the predecessors of the said boards.

It is said that as it would be unjust to the other boroughs to give to Brooklyn borough in 1898 more of the school funds than was raised in that borough in 1897, the makers of the charter and the Legislature could not have meant such a thing. But it will be seen that section 901 was framed in anticipation of such inequalities in the financial adjustments of 1898 in respect of the borough expenditures; and to prevent injustice resulting therefrom, the excess which any borough gets in that year is to be cast back upon it by means of the budget and tax levy of 1899, and by the same means the case of any borough which gets less than it was entitled to is to be adjusted.

The motion is granted.

If it appeared that the apportionment would produce evils, assuming the system to go into effect in July, 1898, but would produce no similar evils, assuming that it did not take effect until January, 1899, that fact would be a legitimate argument in favor of adopting the latter view in case the question was fairly debatable; but when we find that the unfortunate consequence is inherent in the system as applied to existing conditions, whenever that system shall take effect, we cannot recognize in it any reason for hesitating to permit the system to go into operation at once.

And that the Legislature intended to establish the new system complete on and after July 1, 1898, the language of the Greater New York charter leaves little room for doubt. Indeed, it is seldom that the legislative intent as to the time when a statutory change shall take effect is so clearly and unequivocally manifested as it is in this case. "The board of estimate and apportionment shall, out of the residue of the various funds raised for the support of the public schools of the different parts of the city during the year eighteen hundred and ninety-eight, constitute *from and after July first,* eighteen hundred and ninety-eight, the special school fund and the general school fund for the year eighteen hundred and ninety-eight, *so that the schools of the city may begin in the autumn of the year* eighteen hundred and ninety-eight, *to be conducted upon the basis of this division of funds, and in general, upon the system hereinafter prescribed in this act.*" (Greater New York Charter, Laws of 1897, chap. 378, § 11.) The division of funds thus mentioned is the division directed by section 1065 of the charter. This seems so plain that we should not be justified in adopting any other construction, even if the consequences involved greater inequalities in the receipts of the several boroughs than those which will actually ensue. The remedy for such results must be sought from the Legislature. Where the intention of the lawmakers can be ascertained as readily as it seems to be ascertainable in this case, the courts have only to declare it, and leave those whose interests demand different legislation to seek it from the law-making branch of the government.

The order appealed from should be affirmed, with costs.

All concurred.

Order affirmed, with ten dollars costs and disbursements.